# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELODY MAY SCHLEVE, | Case No. 1:13-cv-00563-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S COMPLAINT** |
| v. | (Docs. 15, 16 , 19) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | |
| Defendant. | |
| _____/ | |

## I. INTRODUCTION

Plaintiff Monica May Schleve ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 9, 10.)

## II. BACKGROUND

Plaintiff was born in 1972 and completed high school. (AR 17, 27.) Plaintiff previously worked as a counselor, telemarketer, fast food worker, cashier, and caregiver. (Administrative Record ("AR") 27-29.)

### A.   Relevant Medical History

Plaintiff treated with Arjun Reyes, M.D., for bipolar disorder and polysubstance abuse from approximately June to August 2010. (AR 179-94.) Dr. Reyes diagnosed Plaintiff with bipolar disorder and scoliosis. (AR 183, 191.) Dr. Reyes noted Plaintiff was fully oriented, well-groomed, and cooperative, with appropriate affect. She exhibited normal thought content, intact memory, cognitive function, and abstraction. Dr. Reyes prescribed Topamax and Xanax for Plaintiff's mental conditions; Plaintiff reported increased sleep, improved energy, and that she was "doing a little better." (AR 185-87.)

In November 2010, Plaintiff went to the emergency room complaining of back pain. (AR 198-99.) On examination, Plaintiff was awake, alert and oriented, and in no apparent distress. (AR 198.) Plaintiff had tenderness to the left trapezius on palpation and negative straight leg raising test. Her grip strength and gait were normal; she was tender to medial scapula palpation over the rib angles and to superior scapula trapezius palpation. An X-ray of the cervical spine showed degenerative joint disease advanced for her age. Plaintiff was assessed with muscle strain, but not nerve impingement. (AR 199.) Plaintiff was prescribed Dilaudid and Valium, and stated her back pain improved with the prescriptions. (AR 199.)

In December 2010, Plaintiff went to the emergency room with complaints of chronic left neck and arm pain. (AR 225-26.) Upon examination, Plaintiff had subjective tenderness in the left posterior paravertebral musculature at C5-C7, although there was no spasm or mass. (AR 225.) Plaintiff "perhaps" had a slight decrease to hand grip, but strength and tone were overall normal in the upper and lower extremities. (AR 225-26.) Plaintiff was assessed with degenerative cervical disc disease and cervical radiculopathy, and was prescribed Vicodin and Valium. (AR 226.)

In December 2010, Plaintiff was referred for a pain management consultation with Ashok M. Parmar, M.D., for neck pain. (AR 289-93.) Plaintiff appeared in no acute distress, was alert and oriented, had a normal gait, and was able to do toe and heel walking. (AR 291.) Upon examination, Plaintiff's neck was supple with no masses or thryomegaly. (AR 292.) Although Plaintiff reported subjective neck pain with cervical extension, her cervical extension was full range. Dr. Parmar noted that Plaintiff's sensation was decreased to pinprick in the left arm and hand, but normal in the right upper extremity. Plaintiff had full strength in both upper extremities and her reflexes were symmetrical. There was tenderness over the cervical spine as well as along the left upper trapezius and left scapular muscles. Plaintiff had full range of motion in the lumbar spine with normal sensation, strength, and reflexes in the lower extremities. Straight leg raising tests were negative bilaterally without radicular symptoms. Dr. Parmar recommended a magnetic resonance image ("MRI") of the cervical spine and prescribed Vicodin. (AR 293.)

On March 10, 2011, A. Khong, M.D., reviewed Plaintiff's medical records and completed a physical residual functional capacity assessment. (AR 270-74.) Dr. Khong opined Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand, walk, and sit about six hours a day; and was unlimited in pushing and pulling. (AR 271.) Dr. Khong stated Plaintiff could frequently climb ramps and stairs, balance, and kneel; occasionally stoop and crouch; and could never climb ladders, ropes, or scaffolds, or crawl. (AR 272.) Dr. Khong opined Plaintiff could not perform overhead work and was limited in reaching in all directions, but was unlimited in handling, fingering, and feeling. Dr. Khong found Plaintiff had no visual, communicative, or environmental limitations. (AR 272-73.) On June 29, 2011, Keith M. Quint, M.D., reviewed Plaintiff's record and affirmed Dr. Khong's opinion. (AR 287.)

On March 16, 2011, Anna M. Franco, Psy.D., reviewed Plaintiff's medical records. (AR 275-85.) Dr. Franco concluded there was insufficient evidence in Plaintiff's medical records to make an assessment of Plaintiff's mental impairment claim. (AR 285.) On July 20, 2011, Alan Goldberg, Psy.D., reviewed Plaintiff's medical records and affirmed Dr. Franco's opinion that the record contained insufficient evidence to assess Plaintiff's mental impairment claim. (AR 288.)

B. **Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on March 16, 2011 (AR 48-51), and again on reconsideration on July 21, 2011 (AR 52-56). On March 14, 2012, Plaintiff appeared with counsel and testified before an administrative law judge ("ALJ"); a vocational expert ("VE") testified at the hearing. (AR 24-45.) In a decision dated March 30, 2012, the ALJ found that Plaintiff was not disabled. (AR 9-18.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 27, 2013. (AR 1-3.)

1. **Plaintiff's Testimony**

Plaintiff was 39 years old at the time of the hearing. (AR 27.) Plaintiff testified she last worked in July 2010 as a counselor. (AR 28.) Prior to becoming a counselor, Plaintiff worked as a telemarketer, fast food worker, cashier, and caregiver. (AR 28-30.) Plaintiff was fired from her most recent job as a counselor because of "severe anxiety" and "a panic attack at work." (AR 30.) Plaintiff could not work because it was "hard for [her] to concentrate." (AR 40-41.)

Plaintiff also testified that she suffered from physical impairments which prevented her from working, specifically scoliosis that created a slipped vertebra, for which she had been referred to, but not yet seen, an orthopedic surgeon. (AR 37.) She could lift five pounds, but she was "not supposed to lift anything because of the condition . . . with [her] back." (AR 30.) Plaintiff could not stand for more than an hour or two without having to lie down, could walk about 20 minutes, and could sit for an hour or two at a time. (AR 30-31.) Plaintiff explained she was in pain but would not take pain medication because of her prior substance abuse. (AR 39.)

During a typical day, Plaintiff drove her children to school, came back home and went back to sleep, made something to eat, watched television, picked up her children from school, and helped her children with their homework before bed. (AR 31.) Plaintiff testified that she would "pick up [her] dirty clothes off the floor," but did not grocery shop. (AR 31-32.) Plaintiff watched her daughter's band practice at school at times. (AR 31-32.)

Plaintiff received psychotherapy at one or two month intervals. (AR 40.) Plaintiff took medication for her depression and to enable her to sleep. (AR 32-33.) Her Topamax and lithium

prescriptions were "doing okay" but made her sleepy, and the Topamax resolved her headaches. (AR 33, 38.) At one point, Plaintiff did not take her medication for two months because she did not have health insurance. (AR 36-37.) Although she had a history of substance abuse, Plaintiff had not used illegal drugs since 2010 or alcohol since 2011. (AR 33.)

**2.     Vocational Expert Testimony**

Linda Ferra testified as the vocational expert ("VE") at the hearing. (AR 41-45.) The ALJ asked the VE to classify Plaintiff's past relevant work. (AR 41.) The VE testified Plaintiff's past relevant work included substance abuse counselor, home attendant, cashier II, telemarketer, fast food worker, and waitress. (AR 41-42.)

The ALJ asked the VE whether an individual of Plaintiff's age, education, and work experience; who could lift ten pounds; sit for six hours in an eight-hour workday; stand and walk for two hours in an eight-hour day; and was limited to simple, repetitive tasks could perform any of Plaintiff's past work. (AR 42.) The VE responded that such an individual would not be able to perform any of Plaintiff's past work. (AR 42.)

The ALJ then asked the VE a second hypothetical question regarding whether an individual of Plaintiff's age, education, and work experience; who could lift ten pounds; could complete an eight-hour workday if given the option to alternate between standing and sitting in 30-minute increments as needed; and was limited to simple, repetitive tasks, could perform any of Plaintiff's past work. (AR 42-43.) Before the VE could respond, the ALJ asked the VE whether, given that the Dictionary of Occupational Titles ("DOT") does not discuss a sit/stand option, the VE's work experience gave her the expertise to discuss jobs requiring a sit/stand option. (AR 43.) The VE responded that her experience performing job analysis in settings with a sit/stand option and assisting people in finding jobs requiring a sit/stand option did provide her with such expertise. (AR 43.) The VE then testified that the individual described in the ALJ's second hypothetical could not perform Plaintiff's past work; however, such a person could perform the alternate jobs of assembler, charge account clerk, and order clerk, which existed in substantial numbers in the national economy. (AR 43-44.) The VE noted her estimated numbers of available jobs were reduced by 20 percent to accommodate the sit/stand option in the hypothetical. (AR 43.)

Plaintiff's counsel then asked the VE a third hypothetical: whether, if the hypothetical person were going to be off task for 20 percent of the day because of anxiety, panic attacks, and pain, that person would be able to complete any of the three jobs the VE had previously identified. (AR 44.) The VE responded the individual would not be able to perform any of those three jobs, or any other jobs. (AR 44-45.)

**C.  The ALJ's Decision**

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 11-18.) He found Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 16, 2010, through December 31, 2010, her date last insured (Step One). (AR 11.) Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, being post-surgery status for scoliosis, and bipolar disorder (Step Two), but did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (Step Three). (AR 11-12.) The ALJ determined Plaintiff had the residual functional capacity ("RFC")[2] to perform sedentary work; could lift ten pounds; could complete an eight hour workday if allowed to alternate between sitting and standing in 30-minute intervals; and was limited to simple repetitive tasks. (AR 12-13.) The ALJ determined Plaintiff could not perform her past relevant work (Step Four). (AR 16.) However, the ALJ determined Plaintiff was not disabled because she could perform a significant number of other jobs in the national economy, including assembler, charge account clerk, and order clerk (Step Five). (AR 17-18.)

## III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

6

judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.  APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant

has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listings. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity, despite the impairment or various limitations, to perform her past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

### A. The ALJ Did Not Provide Adequate Reasoning for Rejecting Limitations Included in a Credited Physician's Opinion

Plaintiff contends the ALJ gave significant weight to Dr. Khong's opinion but failed to incorporate the doctor's limitations into the RFC. Specifically, Plaintiff argues the ALJ did not include the doctor's limitations in reaching in all directions and preclusion from overhead work in the RFC finding. (AR 12-13, 272; Doc. 15, 6-7.) Plaintiff argues the ALJ improperly rejected the doctor's limitations without explanation; therefore the ALJ's consideration of Dr. Khong's opinion and the RFC were not supported by substantial evidence. (Doc. 15, 12.)

In response, the Commissioner argues the ALJ's RFC finding was supported by substantial evidence because the ALJ found that despite Plaintiff's impairments, she had the RFC to work. (Doc. 16, 11.) Further, the ALJ's decision to credit Dr. Khong's opinion did not require the ALJ to adopt all of the limitations of Dr. Khong's opinion in Plaintiff's RFC. (Doc. 16, 6.) The Commissioner claims that, although Dr. Khong's assessment aided the ALJ in formulating the RFC, the RFC is within the exclusive province of the ALJ. (Doc. 16, 6.)

### 1. Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984). In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a non-examining medical advisor. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

An RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. Social Security Ruling ("SSR") 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins*, 466 F.3d at 883 (9th Cir. 2006). The ALJ is required to consider any medically determinable impairment including

severe and non-severe conditions in developing Plaintiff's RFC.  20 C.F.R. § 404.1545(a)(2) and § 416.945(a)(2); SSR 96-8.

### 2. The ALJ's Findings

The ALJ determined Plaintiff had the RFC to perform sedentary work; could lift ten pounds; could complete an eight hour workday if allowed to alternate between sitting and standing in 30-minute intervals; and was limited to simple, repetitive tasks due to concentration deficits. (AR 12-13.)

In formulating the RFC, the ALJ assessed the medical evidence as follows:

(The ALJ initially recounted Plaintiff's emergency room visits.)

> The [s]tate agency consultant, A. Khong, M.D., diagnosed the claimant with status post-surgery for scoliosis, and degenerative disc disease of the cervical spine and opined that the claimant is capable of light physical exertion with occasional stopping and crouching, no climbing ladders, and no overhead work due to neck discomfort. I assign significant weight to Dr. Khong's opinion as the limitations are consistent with the evidence as a whole.
>
> In terms of the claimant's alleged mental impairments, the objective findings fails to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do no support the existence of limitations greater than the above listed [RFC]. The medical evidence indicates the claimant was seen in outpatient treatment at Kern County Mental Health Department from March 3, 2009, through January 28, 2010, for diagnoses of bipolar II disorder, amphetamine dependence and alcohol dependence. She was prescribed Topamax, Celexa, Benadryl, and Lamical for her symptoms. The claimant was diagnosed with polysubstance dependence and bipolar disorder NOS on June 30, 2010, by Arjun Reyes, M.D. Mental status examination findings revealed depressed and anxious mood but the remainder of the examination was unremarkable. She was prescribed Topamax and Xanax. On July 5, 2010, he claimant complained of feeling emotional and angry. Topamax was increased. On August 11, 2010, the claimant reported doing better with occasion panic attacks. She was living in a Sober house in Bakersfield. Mental status examination revealed anxious mood. She was assigned a GAF of 55. The treatment notes are almost entirely illegible and therefore of little practical value in the claimant's case.
>
> The [s]tate agency consultant, Anna M. Franco, Psy.D., opined that there was insufficient evidence to adjudicate [a] Title II claim. The [s]tate agency consultant, Alan Goldberg, Psy.D. agreed with Dr. Franco's assessment. I assign little weight to the [s]tate agency consultants' opinions, and based on claimant's subjective complaints [have] given her the benefit of the doubt, I find that the claimant has a severe mental impairment and I have included the appropriate limitations in the

[RFC]. Nevertheless, I note that their findings are consistent with the determination that the claimant is capable of work-related activities.

(AR 15.)

In formulating Plaintiff's RFC, the ALJ stated "[he] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . ." (AR 13) and "the above [RFC] is supported by the totality of the medical evidence of record . . ." (AR 16).

### 3. Analysis

The ALJ clearly afforded Dr. Khong's opinion significant weight when considering Plaintiff's physical limitations. Although Dr. Khong is a non-examining doctor, Dr. Khong is the only doctor credited by the ALJ, and his opinion is not contradicted. (AR 13-16.) However, despite articulating Dr. Khong's limitation against overhead work in his decision, the ALJ never articulated reasons for rejecting any limitations identified in Dr. Khong's opinion. Specifically, although Dr. Khong opined Plaintiff was limited from reaching in all directions and precluded from overheard work, the ALJ did not include those limitations in the RFC.

The Commissioner contends that the ALJ was not required automatically to accept everything in Dr. Khong's opinion because he credited the doctor. (Doc. 16, 6.) While it is true that an ALJ need not necessarily incorporate every facet of a doctor's opinion into the RFC (*see* 20 C.F.R. § 404.1545(a)(1) (ALJs are not required to base their RFCs on any one medical opinion; rather they consider the evidence in the record as a whole in formulating the RFC)), and "need not discuss *all* evidence," the ALJ is required to "explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citing *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)) (internal quotation marks omitted); *see also Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("[T]he ALJ is not required to discuss evidence that is neither significant nor probative." (citing *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003))).

To the extent the ALJ accepts a doctor's findings, the ALJ is required to include them in his RFC. *Van Sickle v. Astrue*, 385 F. App'x 739, 741 (9th Cir. 2010). It is prejudicial error to

11

disregard significant and probative evidence without comment. *See Vincent*, 739 F.2d at 1394. *See Gallant*, 753 F.2d at 1456 (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify a conclusion). It is the ALJ's responsibility to provide an interpretation of the facts and conflicting clinical evidence, and make a finding based on that interpretation. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ may not substitute his or her own interpretation of the medical evidence for the opinion of a medical professional. *Tackett*, 180 F.3d at 1102-03.

Here, the ALJ explained he credited Dr. Khong's opinion because "the limitations [were] consistent with the evidence as a whole." (AR 15.) Because he adopted Dr. Khong's findings, the ALJ should have included the limitations set forth in his opinion. As the only medical opinion credited by the ALJ, the ALJ was required to explain his reasoning for rejecting Dr. Khong's limitations. *Van Sickle,* 385 F. App'x at 741. However, the ALJ failed to provide any reasoning for excluding the limitations. This is problematic because Dr. Khong's limitation from reaching in all directions could be an impediment to Plaintiff performing the alternative identified work as an assembler, which as Plaintiff correctly asserts, requires constant reaching. (Doc. 15, 12.) *See* DICOT 734.687-018.

**4.     Conclusion**

Because the ALJ gave significant weight to Dr. Khong's opinion but did not include the opinion's limitations in the RFC finding, and offered no explanation for rejecting them, the Court is unable to assess the ALJ's reasoning in developing the RFC. Moreover, because the RFC lacks limitations against reaching or overhead work, which contradicts the credited physician's opinion, and the ALJ did not discuss those limitations, the Court cannot find the ALJ's treatment of Dr. Khong's opinion is supported by substantial evidence. The case is remanded to allow the ALJ to clarify what limitations are applicable, and to incorporate any limitations into the RFC.

**B.     The Hypothetical Questions Posed to the VE Were Improper**

Plaintiff argues the ALJ failed to pose a complete hypothetical to the VE. (Doc. 15, 12.) Specifically, Plaintiff contends the hypotheticals posted by the ALJ are incomplete because they did not set forth limitations and describe and quantify them, to ensure the VE understood

12

Plaintiff's abilities and limitations. (Doc. 15, 12-13.) In response, the Commissioner asserts the ALJ posed complete hypotheticals to the VE since the questions included all of the functional limitations the ALJ found to be supported by substantial evidence. (Doc. 16, 11.)

### 1. Legal Standard

Hypothetical questions the ALJ poses to the vocational expert must include all of the claimant's limitations and restrictions. *Magallanes,* 881 F.2d at 756. (*Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988)). In hypotheticals posed to a VE, the ALJ must only include those limitations supported by substantial evidence. *See Osenbrock v. Apfel,* 240 F.3d 1157, 1163–65 (9th Cir. 2001). However, an ALJ is not free to disregard properly supported limitations without explanation.

"Reliance on a hypothetical that fails to include all accepted limitations is insufficient to carry the agency's burden of proving ability to engage in alternative work." *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1231 (E.D. Cal. 2008) (citing *Andrews,* 53 F.3d at 1044 (remanding case to the agency to determine vocational ability based on a hypothetical that accurately reflected the RFC)). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

### 2. The ALJ's Hypotheticals

The ALJ first asked the VE whether an individual of Plaintiff's age, education, and work experience; who could lift ten pounds; sit for six hours in an eight-hour workday; stand and walk for two hours in an eight-hour day; and was limited to simple, repetitive tasks could perform any of Plaintiff's past work. (AR 42.) The VE responded that such an individual would not be able to perform any of Plaintiff's past work. (AR 42.)

The ALJ then asked the VE a second hypothetical question regarding whether an individual of Plaintiff's age, education, and work experience; who could lift ten pounds; could complete an eight-hour workday if given the option to alternate between standing and sitting in 30-minute increments as needed; and was limited to simple, repetitive tasks, could perform any of Plaintiff's

past work. (AR 42-43.) The VE testified that the individual described in the ALJ's second hypothetical could not perform Plaintiff's past work; however, such a person could perform the occupations of assembler, charge account clerk, and order clerk. (AR 43-44.) The VE noted her estimated numbers of available jobs included a 20 percent reduction to accommodate the sit/stand option in the hypothetical. (AR 43.)

### 3. Analysis

In his decision, the ALJ did not articulate on what basis he excluded limitations from Dr. Khong's opinion in the RFC or in the hypothetical questions. Dr. Khong is the only doctor credited in the record, his opinion is not contradicted, and the ALJ credited the opinion because its "limitations are consistent with the evidence as a whole." (AR 15.) The lack of explanation for excluding the limitations negates the legal sufficiency of the hypotheticals posed to the VE. *Osenbrock,* 240 F.3d at 1163–65. Such a failure cannot be deemed harmless because, if the ignored limitations from reaching and overhead work are credited, a proper hypothetical would have included limitations which, the record suggests, would have been determinative as to the VE's recommendation to the ALJ. Likely the identified alternative work of assembler, which requires constant reaching, would not have been available.

This case is remanded so that the ALJ may clarify the extent to which any of the credited limitations are relevant at Step Four, and incorporate those limitations into the hypotheticals posed to the VE.

## C. The ALJ Fulfilled His Duty to Develop the Record

Plaintiff contends the ALJ erred by failing to adequately develop the record. (Doc. 15, 13-14.) Specifically, Plaintiff contends the ALJ had a duty to develop the record because Plaintiff suffered from mental limitations and two reviewing doctors indicated Plaintiff's medical records contained insufficient evidence to assess her DIB claim. Plaintiff asserts that instead of developing the record as required, the ALJ relied upon his own lay opinion in developing Plaintiff's RFC. (Doc. 15, 14.)

The Commissioner responds that, because the ALJ found the evidence in the record supported his finding that Plaintiff was not disabled, the ALJ's duty to develop the record further

was not triggered. (Doc. 16, 7.) Further, the ALJ gave Plaintiff the benefit of the doubt by finding she had a severe mental impairment, and Plaintiff has provided no evidence of additional mental limitations. Finally, Plaintiff's contention that the ALJ should have developed the record lacks merit because Plaintiff's evidence of limitations predates her alleged onset date, occurring when she was still working or after her last insured date, and therefore is inapplicable. (Doc. 16, 7.)

An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001, citing *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). In general, it is the duty of the claimant to prove to the ALJ that the claimant is disabled. 20 C.F.R. § 404.1512(a). To this end, the claimant must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on her ability to work. *Id.* The ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, the ALJ may seek additional evidence from other sources. 20 C.F.R. §§ 404.1512(e); 404.1527(c)(3), *see also Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir. 2001).

Here, the ALJ conducted a review of the record, and in his decision noted that both Dr. Franco and Dr. Goldberg indicated the record contained insufficient evidence to adjudicate Plaintiff's DIB claim. (AR 15.) Upon evaluation of the evidence, the ALJ determined the record was adequate to make such a determination. The ALJ explained that he credited Plaintiff's alleged mental condition of bipolar disorder and her subjective complaints of decreased concentration, memory, and ability to complete tasks, by determining Plaintiff had the severe mental impairment of bipolar disorder. The ALJ then assigned limitations consistent with the condition by including a limitation to simple, repetitive tasks in the RFC. Under these circumstances, the ALJ had no duty to further develop the record.

**D.    In Light of Remand, Plaintiff's Additional Arguments Are Not Ripe for Decision**

    **1.    Apparent conflict between VE testimony and the DOT**

Plaintiff contends that because the ALJ found Plaintiff was limited to jobs requiring only "simple repetitive tasks," and included this limitation in her RFC and the hypotheticals to the VE, the ALJ erred in relying on VE testimony identifying the alternative occupations of charge account clerk and order clerk. (Doc. 15, 6.) Plaintiff claims the jobs of charge account clerk and order clerk both require reasoning level three in the DOT, which is greater functionality than a person limited to simple repetitive tasks can perform. (Doc. 15, 6-9.) Therefore, Plaintiff claims, a conflict between the VE's testimony and the DOT exists. The Commissioner responds that the ALJ properly relied on VE testimony because the jobs of assembler, charge account clerk, and order clerk are all "unskilled," which is consistent with Plaintiff's RFC limitation to simple, repetitive tasks. (Doc. 16, 8.)

Because the Court remands this case for renewed consideration of the RFC and hypotheticals in light of the medical evidence, it would be premature for the Court to weigh a conflict between the VE's testimony and the DOT. Plaintiff's RFC and the ALJ's hypotheticals directly affect the VE's testimony, and reconsideration of the RFC and hypotheticals precludes the Court's analysis of the VE testimony.

    **2.    The ALJ's treatment of plaintiff's testimony**

Plaintiff further contends the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony. (Doc. 15, 16.) The Commissioner responds the ALJ's credibility findings are entitled to deference and were supported by substantial evidence; therefore the ALJ did not err in discrediting Plaintiff. (Doc. 16, pp. 11, 14.)

Because the Court remands this case for renewed consideration of the medical evidence, the Court dispenses with an exhaustive analysis of the ALJ's assessment of Plaintiff's credibility. Consideration of Plaintiff's credibility is inescapably linked to conclusions regarding the medical evidence. 20 C.F.R. § 416.929. As such, the re-evaluation of the medical evidence may impact the ALJ's findings as to Plaintiff's credibility.

**E.     Remand is Required**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate."  *Id*. (alteration in original) (internal quotation marks omitted).  On the other hand, "[w]here there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate."  *Allen v. Astrue*, N. CV 2010 WL 4825925, at *8 (C.D. Cal. Nov. 2, 2010) (remanding the case to the Commissioner after holding that the ALJ had violated the law of the case and the rule of mandate doctrines) (citations omitted).

Here, the Court cannot determine that the ALJ's decision to omit the credited physician's limitations without explanation, and the resulting RFC and hypotheticals to the VE, are supported by substantial evidence.  The RFC finding and hypotheticals posed to the VE directly provide the parameters for the VE testimony about the identified alternate jobs which Plaintiff may perform.  The ALJ's decision regarding whether Plaintiff is disabled is then based on the VE's testimony.  The Court remands the case so that the ALJ may clarify the extent to which the credited medical evidence and limitations are relevant at Step Four, and incorporate those limitations into Plaintiff's RFC and the hypotheticals posed to the VE.

///
///
///
///
///

## VI.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case is REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Melody May Schleve and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.


IT IS SO ORDERED.

Dated:   **June 9, 2014**                              **/s/ Sheila K. Oberto**
                                                UNITED STATES MAGISTRATE JUDGE